FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE STEPHEN YAGMAN, Admitted to the bar of the Ninth Circuit: October 7, 1976, *Respondent.* | No. 07-80153 OPINION |

Filed June 17, 2022

Before: MARSHA S. BERZON, MILAN D. SMITH, JR., and RYAN D. NELSON, Circuit Judges.

Per Curiam Opinion
Dissent by Judge Berzon

## SUMMARY[*]

### Attorney Reinstatement

The panel denied without prejudice the request of Stephen Yagman for reinstatement to the bar of the Ninth Circuit following his readmission to the State Bar of California.

In 2008, Yagman was ordered suspended from practice before this court based on the State Bar of California's suspension following his federal conviction. He was permitted to file a petition for reinstatement if he were reinstated to practice law in California. Yagman was reinstated to practice law in California, but the panel held that he failed to meet his burden to justify reinstatement before this court because he was still disbarred from practice before the New York State Bar. The panel held that an attorney cannot justify reinstatement while he or she is currently suspended or disbarred in another jurisdiction, provided that the other jurisdiction had independent, non-reciprocal reasons for imposing discipline. Here, New York independently determined that Yagman's federal felony conviction constituted grounds for automatic disbarment under its precedent.

Dissenting, Judge Berzon wrote that she would defer to the considered conclusion of California and grant Yagman's motion for reinstatement to the bar of the Ninth Circuit because no rule of this court provided that it was not enough for Yagman to show that he was reinstated to the California

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

bar when he remained disbarred from practicing law in New York, and Judge Berzon saw no reason for the panel in its discretion to require Yagman to demonstrate reinstatement in New York before being reinstated to the Ninth Circuit bar.

## COUNSEL

Stephen Yagman, Yagman & Reichmann LLC, Venice Beach, California, pro se Respondent.

Merri A. Baldwin, Rogers Joseph O'Donnell, San Francisco, California, Amicus Curiae Counsel.

## OPINION

PER CURIAM:

Stephen Yagman seeks reinstatement to the bar of our court following his readmission to the State Bar of California. In 2007, Yagman was convicted of multiple felonies for evading federal income taxes, bankruptcy fraud, and money laundering. He was subsequently suspended and/or disbarred in multiple jurisdictions, including ours. Yagman is still disbarred from practice before the New York State Bar. He therefore fails to meet his burden to justify reinstatement to the bar of our court. *See* 9th Cir. R. 46-2(h); *In re Girardi*, 611 F.3d 1027, 1039 (9th Cir. 2010). We deny Yagman's motion for reinstatement without prejudice to his reapplying if he is reinstated to practice before the New York State Bar.

**FACTUAL AND PROCEDURAL BACKGROUND**

The present motion concerns Yagman's most recent suspension, stemming from a 2007 federal criminal conviction based on his financial crimes. However, 2007 was not the first time Yagman was suspended from practicing law. In 1989, he was suspended for six months in California for seeking an unconscionable fee and for improperly pressuring a client not to settle. *Matter of Yagman*, 3 Cal. State Bar Ct. Rptr. 788, 806 (1997). In 1998, Yagman was again suspended for a year for charging clients an unconscionable fee by taking both a contingency fee percentage and court-awarded fees, among other related misconduct. *See id*. at 806–07, 810–12.[1]

## I. Federal Criminal Conviction

In 2006, Yagman was indicted in federal court on several counts, including one count of attempting to evade federal income taxes, 26 U.S.C. § 7201, one count of bankruptcy fraud, 18 U.S.C. §157, and seventeen counts of money laundering, 18 U.S.C. § 1957. On June 22, 2007, following a 20-day trial, a jury returned a guilty verdict on all counts. *See United States v. Yagman*, No. 06-cr-00227 (C.D. Cal.

---

[1] Yagman had four other disciplinary charges filed against him in the State Bar Court of California that did not result in disciplinary action. *See* SBC No. 84-O-00141; SBC No. 84-O-00241; SBC No. 84-O-00323; SBC No. 91-O-03890. Charges are brought by the Office of Chief Trial Counsel after investigation to see if discipline is warranted. *But see*, California State Auditor, *The State Bar of California's Attorney Discipline Process: Weak Policies Limit Its Ability to Protect the Public From Attorney Misconduct* (April 2022), https://www.auditor.ca.gov/pdfs/reports/2022-030.pdf. Attorneys are presumed innocent until the charges are proven.

June 22, 2007), Dkt. No. 425.**[2]** The evidence at trial established that Yagman concealed assets to avoid paying his personal and law firm business taxes, defrauded the Internal Revenue Service and other creditors, and committed multiple counts of money laundering by submitting false bankruptcy schedules. *See In the Disciplinary Matter of Stephen Yagman*, No. 07-mc-00119 (C.D. Cal. Dec. 27, 2007), Dkt. No. 4 at 4–5. Yagman was sentenced to three years in prison and two years of supervised release. Judgment and Commitment, *Yagman*, No. 06-cr-00227, Dkt. No. 541. We upheld Yagman's conviction on September 11, 2009. *See United States v. Yagman*, 345 Fed. App'x 312, 313 (9th Cir. 2009).

## II. State and Federal Court Suspensions

Following Yagman's conviction, the State Bar of California placed Yagman on interim suspension, effective August 23, 2007, pending final disposition of the criminal proceedings. Order, No. 06-C-13000 (Cal. State Bar Rev. Dep't., July 20, 2007). We were notified of Yagman's California interim suspension on September 7, 2007. We then ordered Yagman to show cause why he should not be "disciplined, suspended, or disbarred" due to (1) "his interim suspension from practice by the California State Bar Court," and (2) "for conduct unbecoming a member of this court's bar as evidenced by his felony conviction in the United States District Court for the Central District of California."**[3]**

---

**[2]** The district court later acquitted Yagman on six of the money laundering counts. *See id.* Dkt. No. 474.

**[3]** Although our initial show-cause order only identified the California suspension as a basis for discipline, we soon amended the show-cause order to include Yagman's felony conviction as an

Yagman requested a hearing in our court, and then asked for and received several extensions in order to permit him to substantively respond to the order to show cause. Yagman's counsel later informed us that if Yagman was not released on bail in his criminal case that he would withdraw his opposition to the suspension and that no hearing would be required. Yagman was not released on bail, and his opposition to the suspension imposed was withdrawn. Yagman failed to respond to orders from our court requiring him to file certain status reports. He also failed to file any objection to the Appellate Commissioner's recommendation that Yagman be suspended from practice before our court based on the State Bar of California's suspension. Therefore, on June 12, 2008, we ordered Yagman suspended indefinitely from the practice of law before our circuit and permitted him to file a petition for reinstatement if he were reinstated to practice law in California.

Although Yagman did not participate in our disciplinary procedures, he did actively fight his suspension in the U.S. District Court for the Central District of California. On September 18, 2007, the Central District of California also issued an order to show cause why Yagman should not be suspended based on the California suspension and his criminal convictions. *In the Disciplinary Matter of Stephen Yagman*, 07-mc-00119 (C.D. Cal. 2007), Dkt. Nos. 1, 3. Yagman responded to the Central District's order to show case and attended a hearing on December 19, 2007. *See Matter of Yagman*, No. 11-mc-25, 2011 WL 13196273, at \*2 (C.D. Cal. June 28, 2011).

---

additional and independent reason for potential suspension or disbarment.

On December 27, 2007, Judge Stephen Wilson—who had presided over Yagman's criminal jury trial—ordered that Yagman be suspended from the practice of law in the Central District of California, noting that Yagman's criminal convictions "involved serious charges of fraud and deceit." *In the Disciplinary Matter of Stephen Yagman*, 07-mc-00119 (C.D. Cal. 2007), Dkt. No. 4 at 4. Yagman was suspended based on his criminal conviction alone. *Id.* The district court explicitly noted that it did not reach the question of whether Yagman should be reciprocally suspended because of the California suspension. *Id.* Judge Wilson also found that the jury, in order to convict Yagman, "must have rejected his testimony at trial and therefore concluded that he lied under oath. The Court, having heard Mr. Yagman's testimony, concurs in this determination. This act alone, independent of any conviction, has been regarded as sufficient for a district court to disbar, let alone suspend, an attorney." *Id.* at 6.

## III.    State and Federal Court Disbarments

On January 15, 2009, the New York State Bar disbarred Yagman. *Matter of Yagman*, 61 A.D.3d 30 (N.Y. App. Div. 2009) (per curiam). The New York court that heard Yagman's case determined that Yagman's federal felony conviction triggered automatic disbarment under state law. *Id.* at 31–32. Yagman never informed us that he had been disbarred by the New York State Bar.

On August 20, 2010, approximately eight months after New York disbarred Yagman, the State Bar of California moved to disbar Yagman on the basis of his federal conviction. Amended Recommendation of Summary Disbarment, No. 06-C-13000 (Cal. State Bar Rev. Dep't Aug. 20, 2010). On November 22, 2010, the California Supreme Court adopted the State Bar's recommendation and summarily disbarred Yagman. Order, No. S186152 (Cal.

Sup. Ct. Nov. 22, 2010). Yagman did not inform our court that he had been disbarred by the State Bar of California.

The Central District of California reciprocally disbarred Yagman on June 28, 2011, after receiving notice of the California disbarment. *See Matter of Yagman*, No. 11-mc-00025, 2011 WL 13196273, at *5 (C.D. Cal. June 28, 2011). Yagman appealed the reciprocal disbarment, and we affirmed. *See In re Yagman*, 473 F. App'x 800, 801 (9th Cir. 2012).

## IV. Yagman's 2012 Motions for Reconsideration

In 2012, Yagman moved twice for reconsideration of our order suspending him from the practice of law in our court. He argued that the conviction upon which he was disbarred in California (bankruptcy fraud) was not the basis of his original California state bar suspension (money laundering and tax evasion). Yagman claimed that our court reciprocally suspended him because of California's suspension, and that this basis was now improper because the eventual disbarment was based on his bankruptcy fraud. Yagman contended that "[i]t is legally inappropriate, arbitrary and capricious, for this Court to continue to impose discipline on respondent when there is no factual or legal predicate for such discipline." At the time Yagman claimed there was "no factual or legal predicate" for his continued discipline, he had been disbarred from practicing law in California and New York, and before the Central District of California, and our court had already affirmed his criminal conviction.

We denied Yagman's 2012 motions as untimely and did not address the substance of his underlying arguments. However, Yagman presented the same argument to the Central District of California as he did to our court. The

district court rejected Yagman's argument, finding that it rested "on an incorrect reading of the State Bar record. Respondent's disbarment was based on his convictions for tax evasion and money laundering, as well as for bankruptcy fraud." *Matter of Yagman*, No. 11-mc-00025 ABC, 2011 WL 13196273, at \*4 (C.D. Cal. June 28, 2011). We affirmed the district court's decision, holding that "Yagman's guilt is . . . final and may not be collaterally attacked in a disciplinary proceeding." *In re Yagman*, 473 F. App'x 800, 801 (9th Cir. 2012).

## V. Yagman's Reinstatement to the California Bar

Yagman petitioned the California State Bar Court for reinstatement in late 2019. Petition for Reinstatement, No. SBC-19-R-30724 (State Bar Ct. Hearing Dep't. Dec. 30, 2019). In that petition, Yagman admitted to committing the underlying criminal conduct that led to his disbarment and acknowledged that his conduct was wrong. The Office of Chief Trial Counsel of the State Bar opposed Yagman's reinstatement arguing that Yagman had not met his heavy burden to establish rehabilitation. *See* Opp'n to Petition for Reinstatement, No. SBC-19-R-30724 (State Bar Ct. Hearing Dep't. June 8, 2020).

The State Bar of California held a multi-day hearing and issued a written decision recommending that Yagman be reinstated to practice law in California. Ultimately, the State Bar determined that Petitioner had "met his heavy burden for reinstatement" by showing "evidence of rehabilitation in light of the moral shortcomings that previously resulted in discipline." No. SBC-19-R-30724 (State Bar Ct. Hearing Dep't. Jan. 29, 2021). On May 26, 2021, the Supreme Court of California reinstated Yagman. *In re Stephen Yagman on Reinstatement*, No. S267842 (Cal. May 26, 2021).

**VI. The Present Motion for Reinstatement**

On June 4, 2021, Yagman filed a motion for reinstatement to practice law before our court. Motions for reinstatement require "a concise statement of the circumstances of the disciplinary proceedings, the discipline imposed by this Court, and the grounds that justify reinstatement of the attorney." 9th Cir. R. 46-2(h). Yagman's three-sentence motion was deficient, as it did not provide any statement regarding the "circumstances of the disciplinary proceedings" or the "discipline imposed by this Court." Moreover, given the serious nature of Yagman's crimes and his prior disciplinary history, we determined that the appointment of pro bono counsel Merri A. Baldwin as amicus curiae would benefit us in evaluating whether Yagman's petition adequately demonstrated "grounds that justify reinstatement."

We requested simultaneous briefing from Amicus Baldwin and Yagman to address: (1) what standard governs petitions for reinstatement to the Ninth Circuit Bar; and (2) how the reinstatement standard should be applied in this case. In her amicus brief, Ms. Baldwin recommended that when an attorney is suspended or disbarred based upon discipline in another forum, we should afford that forum's reinstatement decision similar deference that we extend to the original disciplinary decision. She also reviewed the California State Bar Court's decision to reinstate Yagman and recommended that we give it deference because it is carefully considered and well supported.

Yagman also submitted a brief, this time laying out several arguments for why he should be reinstated. Surprisingly, Yagman chose to rely predominantly on the fact that our court reciprocally suspended him instead of disbarring him. This argument is not well-taken and

underscores the fact that Yagman never notified our court of his subsequent New York or California disbarments.

Yagman also argued that "[t]his court could have based Yagman's suspension on his criminal convictions, but it did not do that, and instead made his suspension reciprocal" based on the California suspension. Our 2007 order to show cause required Yagman to explain why he should not be suspended because of his California disbarment and his criminal convictions. Yagman never substantively responded to our order to show cause, nor did he participate in a hearing. We do not know fully what our reasons for suspension may have been had Yagman participated in our disciplinary proceedings. We note, however, that Yagman did participate in the disciplinary proceedings in front of the U.S. District Court for the Central District of California. There, the district court suspended Yagman on the basis of his criminal conviction and declined to reach the reciprocal basis. *See In the Disciplinary Matter of Stephen Yagman*, 07-mc-00119 (C.D. Cal. 2007), Dkt. No. 4 at 4.

Nowhere in Yagman's supplemental brief did he mention that he was currently disbarred from practicing law in the state of New York. We learned of the New York disbarment through our own independent research as we considered whether Yagman had met the burden for reinstatement in our court. On January 18, 2022, we issued another order to show cause why Yagman should not also be disbarred by our court in light of his New York disbarment. After reviewing Yagman's most recent response, we now consider his motion for reinstatement in light of his continued disbarment from the practice of law by the New York State Bar.

## ANALYSIS

### I.  Ninth Circuit Standard for Reinstatement

Ninth Circuit Rule 46-2(h) sets forth the procedure by which attorneys may seek reinstatement following suspension or disbarment from practice before our court.  It provides: "A suspended or disbarred attorney may file a petition for reinstatement with the Clerk. The petition shall contain a concise statement of the circumstances of the disciplinary proceedings, the discipline imposed by this Court, and the grounds that justify reinstatement of the attorney."  9th Cir. R. 46-2(h).

In *In re Girardi*, we indicated that as part of proving "the grounds that justify reinstatement," attorneys must, at a minimum, show they are in good standing in all jurisdictions to which they are admitted.  611 F.3d at 1039.  Specifically, we noted that Rule 46-2(h) petitions should "include evidence that [the attorney] is in good standing, with no discipline pending, in all courts and bars to which [the attorney] is admitted."  *Id.*  We now hold that an attorney cannot justify reinstatement while he or she is currently suspended or disbarred in another jurisdiction—provided that the other jurisdiction had independent, non-reciprocal reasons for imposing discipline.[4]

The New York State Bar disbarred Yagman in January 2009, more than eleven months before California disbarred him.  Importantly, New York's disbarment of Yagman was

---

[4] This pre-condition is important for instances where, as occasionally happens, an attorney is reciprocally suspended or disbarred in multiple jurisdictions stemming from one bar's decision.  An attorney in that situation need not first be reinstated in every state or federal court that imposed reciprocal discipline before seeking reinstatement here.

not reciprocally imposed. New York independently determined that Yagman's federal felony conviction constituted grounds for automatic disbarment under its precedent. *Matter of Yagman*, 61 A.D.3d at 31–32. Accordingly, Yagman cannot meet his burden to show that "he is in good standing, with no discipline pending, in all courts and bars to which he is admitted." *In re Girardi*, 611 F.3d at 1039.

We respect Amicus Baldwin's recommendation that we give deference to state court reinstatement decisions when evaluating whether an attorney has met Rule 46-2(h)'s requirements. State bar disciplinary proceedings are typically "of a character to warrant federal-court deference." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982). However, we temper the extent of our deference by observing that after the State Bar of California reached its decision in this case, the California State Auditor published a report finding that the California State Bar's weak enforcement policies had long allowed patterns of serious misconduct, especially by prominent attorneys, to go unpunished for extended periods of time, and allowed for failures in tracking staffers' conflicts of interest.[5]

Regardless, it is not enough for Yagman to show he is reinstated to the California bar when he remains disbarred from practicing law in New York. *See In re Girardi*,

---

[5] California lawmakers required the State Bar of California to undergo an audit in response to its failure to properly investigate allegations against a prominent attorney. *See, e.g.*, Joyce E. Cutler, *California Bar's Policies Don't Protect Public, Audit Finds*, Bloomberg Law, (Apr. 14, 2022, 2:41 PM), https://www.bloomberglaw.com/bloom berglawnews/us-law-week/X2B204OG000000?bna_news_filter=us-law-week#jcite.

611 F.3d at 1039.  We hold that Yagman cannot be reinstated to the bar of our court until he is authorized to practice law by the New York State Bar because he has not met Rule 46-2(h)'s requirement to "justify" his reinstatement. Accordingly, we deny Yagman's motion for reinstatement without prejudice to his right to file a future motion for reinstatement if he is reinstated to practice by the New York State Bar.

## II.  Ninth Circuit Rule 46-2(c) Notice Requirement

Our January 18, 2022, order to show cause required Yagman to "explain whether, and if so how and when, he notified this court of his California and New York disbarments."  He failed to do so.  Ninth Circuit Rule 46-2(c) provides, in part, that "[a]n attorney who practices before this Court shall provide the Clerk of this Court with a copy of any order or other official notification that the attorney has been subjected to suspension or disbarment in another jurisdiction."   9th Cir. R. 46-2(c).   Attorneys are thus required to notify our court of any suspensions or disbarments, even while they are suspended or disbarred. Although Yagman's failure to comply with this Rule does not factor into our reasons for denying his motion for reinstatement, we address his response lest there be any future confusion.

Yagman never informed us of his subsequent disbarments in New York or California.  Yagman admits that he "did not formally notify this court of his California disbarment."  He says that instead of notifying our court, he "did immediately, unofficially notify his friend, former judge of this court, Stephen Reinhardt" of his California disbarment, and assumed our court was fully aware of the disbarment.  He also admits he never informed us of his New

York disbarment and says he was not aware of our court's Rule 46-2(c).

Ninth Circuit Rule 46-2(c) imposes a notice requirement. It obligates attorneys to notify us when they have been suspended or disbarred in another jurisdiction. Yagman argues that the Rule did not apply to him because by its terms it only obligates "[a]n attorney who practices before this Court" to provide such notice, and he was suspended at the time he received notice of the California disbarment. This is sophistry. Neither suspension nor disbarment relieve attorneys of their duty to promptly inform our court of discipline imposed on them by other jurisdictions. The term "an attorney who practices before this Court" also encompasses those attorneys who are then inactive in our circuit due to their suspension or disbarment. If Yagman were to apply for admission to our court afresh, he would need to disclose his prior disciplinary history. *See* Ninth Circuit Form 31.

## CONCLUSION

Yagman has not met his burden to demonstrate grounds that justify his reinstatement to the bar of our court, as required by Ninth Circuit Rule 46-2(h). Accordingly, we deny Yagman's motion for reinstatement without prejudice to his filing a future motion for reinstatement if he is reinstated to practice law by the New York State Bar.

BERZON, Circuit Judge, dissenting:

I would grant Stephen Yagman's motion for reinstatement to the bar of our court.

No rule of this court provides that "it is not enough for Yagman to show he is reinstated to the California bar when he remains disbarred from practicing law in New York." Majority Op. 13. In the absence of a rule requiring Yagman to be reinstated in New York before being reinstated to the bar of our court, the majority relies on a suspension order we issued to different attorneys in a different case. *Id.* at 12 (citing *In re Girardi*, 611 F.3d 1027, 1039 (9th Cir. 2010)). In *Girardi*, the suspension order itself instructed the suspended attorneys, if they petitioned for reinstatement, to include in the petition "evidence that [they were] in good standing, with no discipline pending, in all courts and bars to which [they were] admitted." 611 F.3d at 1039. Our discretionary authority to "discipline an attorney" who practices before our court allowed us to impose such a condition. Fed. R. App. P. 46(c). But we did not cite any rule *requiring* us to impose the condition, nor did we state or imply that *every* attorney petitioning for reinstatement must make the same showing. *Girardi*, 611 F.3d at 1039.

Yagman's suspension order in this court contained no requirement similar to the one imposed in *Girardi*. Instead, when we suspended Yagman, we said he could move for reinstatement "if he is reinstated to practice in California."

The State Bar of California disbarred Yagman "on the basis of his federal conviction." Majority Op. 7. The New York State Bar disbarred Yagman based on the same conviction, nothing else. *Id.* The Supreme Court of California reinstated Yagman after the State Bar of California held a multi-day hearing and determined that

Yagman had "met his heavy burden for reinstatement" by proving "by clear and convincing evidence the requisite good moral character for reinstatement, comprising 'overwhelming proof of reform which we could with confidence lay before the world in justification of a judgment again installing him in the profession.'" No. SBC-19-R-30724, at 1, 27 (State Bar Ct. Hearing Dep't. Jan. 29, 2021) (alterations omitted) (quoting *In re Menna*, 11 Cal. 4th 975, 989 (1995)).

"The traditional and primary responsibility of state courts for establishing and enforcing standards for members of their bars and the quasi-criminal nature of bar disciplinary proceedings call for exceptional deference by the federal courts." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 438 (1982) (Brennan, J., concurring in the judgment) (citation omitted). "Before imposing reciprocal discipline," we "conduct a deferential review of the proceedings that resulted in the initial discipline imposed to satisfy [ourselves] that the discipline was not inappropriate." *In re Kramer*, 282 F.3d 721, 725 (9th Cir. 2002). "We will extend great deference to the state court's determination unless our independent review reveals . . . (1) a lack of due process; (2) insufficient proof of attorney misconduct; or (3) some other grave reason exists that should prevent the court from recognizing the state court's determination." *Gadda v. Ashcroft*, 377 F.3d 934, 943 (9th Cir. 2004) (internal quotation marks and alteration omitted) (citing *Selling v. Radford*, 243 U.S. 46, 51 (1917)). We should apply the same great deference in reviewing a state court's reinstatement decision, and so should reinstate Yagman as an attorney in our court based on the California reinstatement.

As to the New York disbarment, we have no indication that Yagman has applied for reinstatement in New York. He has represented to us that he is 77 years old and does not intend to practice law in New York again. Although it would be within our discretion to require Yagman to demonstrate reinstatement in New York before being reinstated to the bar of our court, in these circumstances I see no reason to do so.

Imposing the requirement that Yagman trigger plenary reinstatement proceedings in New York would be a pointless burden. New York's reason for the disbarment was the same as California's—the conviction itself—not any additional reason. As Yagman practiced principally in California, California was in a position to review Yagman's legal career, consider the views of California lawyers and judges, and review Yagman's rehabilitation efforts in California. New York is unlikely to be able to develop any additional information, and it has little interest in doing so, as Yagman does not intend to practice there.

As I would defer to California's considered conclusion, I would grant the petition for reinstatement. I therefore respectfully dissent.